IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TOMMY DILLE,

          Plaintiff,

    v.                                            CIVIL ACTION
                                                    NO. 13-2668

DAY & ZIMMERMANN NPS,

          Defendant.

## **MEMORANDUM**

**SCHMEHL, J.  /s/ JLS**                                                                        **June 23, 2015**

      The Court previously dismissed the complaint in this case because general unfairness in an employment termination does not raise a viable cause of action and because any implied whistleblower claim was not stated with enough clarity or specificity. The Court permitted the *pro se* plaintiff to amend his complaint to identify a particular legal provision that might ground a whistleblower claim. Plaintiff indeed filed an amended complaint identifying an OSHA whistleblower provision and giving some additional information about the situation surrounding his claim. Defendant[1] again moved to dismiss, arguing primarily that the OSHA provision does not create a private cause of action. The Court agrees that Plaintiff cannot bring a claim under the section cited and will dismiss the amended complaint, this time with prejudice.

---

[1] At the time of the amended complaint, Plaintiff also voluntarily dismissed former individual Defendant Dave Balatincz/Balantincz, and only the company remains as a defendant.

Facts

The description of events Plaintiff now offers in his amended complaint is as follows: During roofing work on a building at the Perry Nuclear Power Plant, someone noticed that the area underneath the work was not blocked off to stop people from walking in that area. Another worker (an employee of contractor The Roth Bros., Inc., rather than Plaintiff's employer, Day & Zimmerman) told Plaintiff to go to the area below and put up caution tape to block off the area. Plaintiff took issue with that instruction, apparently questioning both whether "caution" or "danger" tape was appropriate and whether it would be better to have one of the workers already on the ground put up the barrier because they could get to the area without going through a radiation checkpoint. Work then stopped so the situation could be addressed, although it is not clear how the safety barrier issue was eventually resolved.

When the work stopped, Plaintiff contacted OSHA to make a complaint. OSHA directed him to check with the Nuclear Regulatory Commission, who told him the building at issue was not under their purview. Plaintiff again contacted OSHA, who asked if the safety issue had been resolved; when Plaintiff answered that it had, OSHA declined to investigate further.

A couple of days later, the Day & Zimmerman manager allegedly tried to impose some discipline on Plaintiff and two others regarding this situation, but a union representative intervened. About two months later, Defendant terminated Plaintiff (through former Defendant Balantincz), allegedly for sleeping during a briefing, which Plaintiff denies. Plaintiff also notes offhand that he was the only black person on the project.

Discussion

In response to the Court's instruction in the prior opinion, Plaintiff has identified 29 U.S.C. § 660(c), also known as Section 11(c) of the Occupational Safety and Health Act. The section provides: "No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint . . . under or related to this chapter . . . ." *Id.* at § 660(c)(1). The section goes on to provide that if an employee believes this protection has been violated, he may file a complaint with the Secretary of Labor, who shall investigate according to his discretion and may file an action in federal district court if warranted. *Id.* at § 660(c)(2).

The statute does not provide for a private right of action—that is, it does not allow an individual to bring a lawsuit on his own behalf for a violation of this section—and the courts have held the same. *See King v. Fox Grocery Co.*, 642 F. Supp. 288, 290 (W.D. Pa. 1986) ("An employee who believes he is the victim of such discrimination may file a complaint with the Secretary of Labor. This is the statutory remedy applicable to allegations of this nature; the courts of appeals have not found a private right of action under OSHA."); *Braun v. Kelsey-Hayes Co.*, 635 F. Supp. 75, 80 (E.D. Pa. 1986) ("The statutory remedies are exclusive: they provide for the filing of a complaint with the Secretary of Labor and there is no private right of action."). Neither can Plaintiff resort to an "implied" right of action under the statute itself. *See Holmes v. Schneider Power Corp.*, 628 F. Supp. 937, 939 (W.D. Pa.) ("[W]e know of no case which held that § 660(c) did afford a private remedy and we believe that the *Taylor* court correctly decided that no such private right of action should be implied from the OSHA statute."), *aff'd*, 806

F.2d 252 (3d Cir. 1986). There is, therefore, no need to consider Defendant's argument that any implied cause of action has been lost by Plaintiff's failure to exhaust administrative remedies.

Though no private action, express or implied, can be based directly on the OSHA statute, courts have sometimes held that allegations of an OSHA whistleblower violation can state a claim under state law for termination in violation of public policy. *See Wetherhold v. Radioshack Corp.*, 339 F. Supp. 2d 670, 678 (E.D. Pa. 2004). Courts should not too readily allow such claims, however, because the Pennsylvania Supreme Court

> has steadfastly resisted any attempt to weaken the presumption of at-will employment in th[e] Commonwealth. If it becomes the law that an employee may bring a wrongful discharge claim pursuant to the 'public policy' exception to the at-will employment doctrine merely by restating a private cause of action for the violation of some federal regulation, the exception would soon swallow the rule.

*McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 290 (Pa. 2000). When courts have allowed these claims, it has been significant that the plaintiffs made express reference to violation of public policy. *See Wetherhold*, 339 F. Supp. 2d at 678 ("his pleading states unequivocally that his termination was a 'violation of public policy of the Commonwealth of Pennsylvania'"); *see also Carlson v. Cmty. Ambulance Servs., Inc.*, 824 A.2d 1228, 1232 n.3 (Pa. Super. Ct. 2003) (citing *McLaughlin* and noting that plaintiff-appellant's failure to state what public policy was at issue would by itself justify dismissal). It has also been key for plaintiffs to articulate a Pennsylvania-specific policy.

*See Lambert v. Envtl. Restoration Grp., Inc.*, No. 2:07-CV-1573, 2008 WL 723328, at *4 (W.D. Pa. Mar. 14, 2008) ("[A] plaintiff must point to a specific Pennsylvania policy—a federal duty, by itself, is not sufficient. In at least some circumstances, the plaintiff's burden can be met by pointing to a Pennsylvania law that supplements or mirrors federal law."); *Wetherhold*, 339 F. Supp. 2d at 678-79 (discussing the plaintiff's comparison between OSHA and the Pennsylvania Worker and Community Right-to-Know Act).

Here, Plaintiff's failure to explicitly reference "public policy" is probably an artifact of his *pro se* status, and the Court is reluctant to hold that against him. But the leeway afforded a *pro se* plaintiff can extend only so far. There are numerous ways in which the insufficient clarity of Plaintiff's filings makes this case extremely difficult to analyze. For instance, there are indications in both the original and amended complaint that Plaintiff is a union member, and "the Pennsylvania common law wrongful discharge cause of action that is available to a Pennsylvania at-will employee does not extend to a contractual or union-represented employee." *Danao v. ABM Janitorial Servs.*, No. CIV.A. 14-6621, 2015 WL 2378644, at *19 (E.D. Pa. May 19, 2015); *see also Harper v. Am. Red Cross Blood Servs.*, 153 F. Supp. 2d 719, 721 (E.D. Pa. 2001). So a Pennsylvania public policy wrongful discharge action might not even be available to him at all. Of course, other parts of the Court's analysis, particularly in the prior opinion, perhaps mistakenly assume that Plaintiff was an at-will employee rather than a union member. Also as noted in the prior opinion, there are potential choice of law issues that cannot be adequately addressed without referring to the possibility of an employment agreement with a choice of law provision or seeking more information about the working arrangement (Plaintiff and the nuclear plant are both apparently in Ohio, while Defendant

is based in Pennsylvania and has referred to Pennsylvania law); therefore, the entire discussion of a *Pennsylvania* wrongful discharge claim may even be off point. Further, the allegations are fundamentally weak as to any connection between the safety dispute and Plaintiff's discharge two months later. All issues considered, this is simply not a case where the Court can go to the lengths necessary to construct a viable claim on Plaintiff's behalf from the tenuous allegations and speculative legal theories available.

It would be equally unreasonable to create a race discrimination claim from the following bare statement in the amended complaint: "The Plaintiff is a black male, the ouly [sic] Black person on the project at that time. This may also be an issue." To make out a case of discriminatory discharge, a plaintiff must allege that "either similarly-situated non-members of the protected class were treated more favorably or the adverse job action occurred under circumstances that give rise to an inference of discrimination." *Langley v. Merck & Co., Inc.*, 186 F. App'x 258, 259 (3d Cir. 2006). Plaintiff offers nothing to suggest a link between his race and his discharge; his mention of his race is not even sufficient to raise an expectation that he could make out this element if given another chance to amend.

Moreover, as Defendant argues, Plaintiff's failure to raise racial discrimination in a timely fashion bars such a claim. The statement quoted above, from Plaintiff's amended complaint, is his first mention of race in this action. He has attached an EEOC right-to-sue letter dated February 27, 2013, from which he had ninety days to file suit. The Court agrees with Defendant that any purported race claim cannot relate back to the date of the original complaint. *See Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004) (explaining that relation back depends upon fair notice to the opposing party and

commonality of facts). That document only put Defendant on notice of arguments about Plaintiff's termination relating either to whistleblower issues or the simple falsity of the grounds offered for termination (sleeping during a briefing); those issues are different in kind from a discrimination claim based on Plaintiff's membership in a protected class, and they would involve different facts.[2]

Plaintiff has had a previous opportunity to amend. As discussed above, it is impossible for this Court to formulate a viable claim from the amended allegations. Clearly, no further amendment is warranted, and this matter will be dismissed with prejudice.

---

[2] Even two kinds of class-based discrimination may not be similar enough for relation back. *Compare Anderson v. Mercer Cnty. Sheriff's Dep't*, No. CIV.A. 11-07620 JAP, 2013 WL 776237, at *5 (D.N.J. Feb. 28, 2013) (approving plaintiff's addition of a gender claim to a preexisting race claim), *appeal dismissed*, (June 20, 2013) *with Pintor v. Port Auth. of New York & New Jersey*, No. CIV. A. 08-2138 SDW, 2009 WL 2595664, at *4 (D.N.J. Aug. 20, 2009) (disallowing relation back of a race claim to earlier age and disability claims).